UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARITZA MELENDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROL W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Civ. No. 15-4719 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Maritza Melendez, brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner) denying her claim for Social Security Disability Insurance benefits ("DIB"). Her application, filed on May 13, 2011, alleged a period of disability beginning on November 3, 2004, when she was 24 years old. The application was denied in August 2011 (R. 114)[1] and on reconsideration in March 2014 (R. 121). On July 30, 2013, the ALJ conducted a hearing, at which plaintiff had counsel. (R. 28) In the course of the hearing, Ms. Melendez amended her disability onset date to September 29, 2009. (R. 16, 33)

On December 11, 2013, the ALJ is issued a written decision finding that Ms. Melendez was not disabled under the SSA. (R. 16) On May 7, 2015, the Appeals Council filed a decision affirming the ALJ's decision. (R. 4) The ALJ's decision, as modified by the Appeals Council, constitutes the final decision of the Commissioner.

---

[1] Page numbers in the Administrative Record, ECF No. 9, are cited as "R __".

1

On June 29, 2015, Melendez filed this action seeking review of the Commissioner's decision. She asserts (a) that the ALJ should have found that her depression and anxiety were severe impairments; and (b) that the ALJ should not have found that she was capable of sedentary work.

## I. Five-Step Process and This Court's Standard of Review

The five-step process prescribed by regulation may be summarized as follows:

> **STEP 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **STEP 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **STEP 3:** Determine whether the impairment or combination of impairments meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **STEP 4:** Determine whether, despite any impairment or combination of impairments, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five.
>
> **STEP 5:** The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to legal issues, including the ALJ's adherence to the five-step process outlined above, my review is plenary.[2] As to factual issues, I will adhere to the ALJ's findings, as long as they are supported by substantial evidence.[3] Where the evidence clashes, I will "determine whether the administrative record contains substantial evidence supporting the findings."[4] Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] That is "less than a preponderance of the evidence but more than a mere scintilla."[6]

I may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing.[7] Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence indicating that the claimant is disabled and entitled to benefits.[8] Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry.[9] Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings.[10] It is also proper to remand where the ALJ's findings are not the product of a complete review which

---

[2]   See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[3]   Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)).

[4]   Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

[5]   Id.

[6]   Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).

[7]   Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Commissioner, 235 F. App'x 853, 865-66 (3d Cir. 2007).

[8]   Podedworny, 745 F.2d at 221-222; Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (citing Podedworny); see also Bantleon v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 99537, at *38-39 (D.N.J. 2010).

[9]   See Podedworny 745 F.2d at 221-222.

[10]  See Burnett v. Commissioner of SSA, 220 F.3d 112, 119-120 (3d Cir. 2000); Leech v. Barnhart, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.").

"'explicitly' weigh[s] all relevant, probative and available evidence" in the record.[11]

## II. The ALJ and Appeals Council Decisions

The ALJ found that the claimant met the insured status requirements of the SSA through December 31, 2010, and had not engaged in substantial gainful activity since September 29, 2009, the amended alleged onset date. (R 18)

At step two, the ALJ found that Ms. Melendez had the following severe impairments: left hand fusion, back disorder, and asthma. The ALJ found that the alleged mental impairment of major depression was not severe, because it did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities. (R 19)

At step three, the ALJ found that the claimant did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The analysis focused on listing 1.00 (musculoskeletal system), but also touched on listing 3.02A (relating to chronic obstructive pulmonary disease and asthma). It did not include mental impairments.

The ALJ defined the claimant's residual functional capacity (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and/or carry 10 pounds occasionally, 5 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday. Additional limitations include a sit/stand option and the following limits, never crawling or climbing ladders or scaffolds, only occasionally doing fine manipulations with the non-dominant left hand, and only occasionally pushing or pulling with the upper left extremity, avoid extreme cold heat, cold, wetness, humidity, dust odors fumes and pulmonary irritants.

(R 20)

---

[11] *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

At step four, the ALJ found that the claimant, given her RFC, would be unable to perform her past relevant work as a volleyball consultant and teacher's aide.

At step 5, the ALJ found that, considering the claimant's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. (R 22) She was aided in that determination by the opinion of a vocational expert, who identified such positions as order clerk, DOT # 209.587-014, unskilled, svp 2, sedentary (1700 jobs available regionally, 125,000 nationally); telemarketer, DOT # 299.357-014, semi-skilled, svp 3, sedentary (1600 regional, 300,000 national); weigher, DOT # 539.485-010, unskilled, svp 2, sedentary (2100 regional, 142,000 national). (R 22)

It followed, wrote the ALJ, that Ms. Melendez was not under a disability, as defined in the Social Security Act, at any time from September 29, 2009, through December 31, 2010. (R 23)

On appeal, the Appeals Council accepted additional evidence and wrote its own decision. (R 4) The Council largely adopted the decision of the ALJ, but supplemented or corrected some of the reasoning.

The Appeals Council considered a certification of the U.S. Department of Veterans Affairs that assigned Ms. Melendez a 100% permanent and total disability rating effective February 9, 2010. It gave that certification little weight, however, because the VA standards are different, the VA evaluation clashed with that of the State agency medical consultants, and the record showed that Ms. Melendez engaged in robust physical activities. (R 5)

The Appeals Council also noted that the ALJ had directly applied Medical-Vocational Rule 201.28, instead of treating it as a framework, and corrected that aspect of the ALJ's reasoning. (R 5)

In all other respects, the Appeals Council's conclusions essentially track those of the ALJ.

## III. Discussion

### A.   Depression and Anxiety

Ms. Melendez argues that, at step two, her depression and anxiety, including PTSD, should have been found to be a severe impairment.

While the step two inquiry is not overly rigorous—it is a means of screening clearly insufficient claims—it does require evidence of a "severe medically determinable impairment." *See Boone v. Barnhart*, 353 F.3d 203, 205 n.4 (3d Cir. 2003). Of course, a mere medical diagnosis does not equate to a severe impairment. It is a fundamental principle that the mere "presence of a disease does not establish disability within the Act." *Capoferri v. Harris*, 501 F. Supp. 32, 36 (E.D. Pa. 1980), *aff'd*, 649 F.2d 858 (3d Cir. 1981). *Accord Alexander v. Shalala*, 927 F. Supp. 785, 792 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996).

> The Administration's guidance as to the step two analysis states:
>
> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

SSR 96-3p. This amounts to a directive that, at step two, doubts should be resolved in the claimant's favor:

> [A]n applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.' SSR 85–28, 1985 WL 56856, at *3 . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *Newell [v. Comm'r of Soc. Sec.]*, 347 F.3d at 546–47. In short, '[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims.' *Id.* at 546 (internal citations omitted).

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

That said, step two's screening or gate-keeping function does not imply a different or separate standard of review. *McCrea*, 370 F.3d at 360. A negative

6

finding at step two, as at other steps of the analysis, "is to be upheld if supported by substantial evidence on the record as a whole." *Id.* at 360–61.

It may be possible in a proper case to find that a step two error was harmless. The gate-keeping function of step two implies that if, as here, even one severe impairment is found, then the analysis will proceed to the next step. It follows that a step two error has consequences only if consideration of a particular impairment *ends* at step two—*i.e.*, if a particular impairment is erroneously found non-severe, screened out, and excluded from consideration in the subsequent steps.[12]

The ALJ's analysis screened out depression and anxiety at step two. The step three analysis considered only the physical impairments that had been found to be severe at step two—disorders of the left arm and back, as well as asthma. Mental impairments were not considered at step three, alone or in combination with the physical impairments. On the other hand, however, when assessing the claimant's RFC, the ALJ did to some degree consider the evidence of mental, as well as physical, impairments. (R 21)

At step two, the ALJ considered the medically determinable impairment of major depression, but found it to be non-severe. In doing so, he analyzed the four broad functional areas, known as the "paragraph B" criteria, for evaluating mental disorders: (1) a marked[13] limitation of daily living activities;[14] (2) a

---

[12] The brief of the Commissioner, then, oversimplifies in stating that "as long as one severe impairment is named and the ALJ proceeded through the sequential evaluation, there can be no material deficiency at step two." SSA Br. at 9.

[13] A marked degree of limitation is more than moderate but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(C).

[14] Among other activities, activities of daily living include cleaning, shopping, cooking, taking public transportation, paying bills, caring for personal hygiene and grooming, and maintaining a residence. *Id.* at 12.00(C)(1). In order to have marked limitation, an applicant should have "serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions." *Id.*

7

marked restriction in social functioning;[15] (3) a marked restriction in maintaining concentration, persistence, or pace;[16] or (4) repeated episodes of decompensation, each of extended duration.[17] (R 19) Without significant discussion of the evidence, the ALJ found no limitation as to the first, mild limitation as to the second and third, and no episodes of extended duration as to the fourth. (R 19)

This Court will remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted). Here, the step two findings do not cite or discuss the evidence to any significant degree. Nor do they consider the mental impairments in combination with the physical ones. On appeal, the claimant's counsel refers to medical evidence of depression and PTSD, anger issues, and the like, which were treated with Wellbutrin, Trazadone, and Paxil. (*See* Plaintiff Br. at 30–32, ECF no. 13) The court cannot evaluate such medical evidence on its own, where the ALJ has not done so. In short, I have an

---

[15] In general, capacity to maintain social functioning is indicated by ability "get along with others." *Id.* at 12.00(C)(2). In a work environment, this includes an applicant's ability to respond appropriately to authority figures and cooperate with coworkers. *Id.* In any case, an applicant may have a marked limitation in social functioning if she is "highly antagonistic, uncooperative, or hostile". *Id.*

[16] An applicant's capacity to maintain concentration, persistence, or pace is demonstrated by the ability to sufficiently focus and timely complete workplace tasks. Determining whether an applicant has marked limitations of concentration, persistence, or pace requires something of a gestalt analysis (*e.g.*, consideration of the task's complexity and objectives, its supervision and assistance, the production standards by which completion of the task is judged, etc.) that is best informed by actual limitations observed or reported in work settings, but such limitations may be reflected in other settings or observed in a clinical or psychological examination. *Id.* at 12.00(C)(3). An applicant may have a marked limitation in concentration, persistence, or pace if she cannot complete tasks "without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistence pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." *Id.*

[17] A "repeated episode of decompensation of extended duration" means three episodes in a year, or an average of once every four months, each lasting for at least two weeks. *Id.* at 12.00(C)(4).

insufficient basis for reviewing the step two rejection of the claim of mental impairment.

Later, in connection with the RFC analysis, the ALJ makes brief reference to the psychological evidence in the context of discussing the physical evidence. (R 21) That discussion very briefly cites certain evidence to the effect that any psychological impairment was not major, but consisted only of a mood disorder relating to the claimant's unhappiness about her medical problems.

I do not say that the ALJ could not have permissibly reached that conclusion. That conclusion was reached, however, without discussing the contrary evidence or giving reasons for rejecting it. Such a discussion is insufficient to rescue the step two analysis from its flaws.

### B.  Physical Limitations/Sedentary Work

The ALJ's conclusions as to Ms. Melendez's physical limitations and ability to do sedentary work, in contrast, were supported by substantial evidence.

The ALJ, at step three, briefly found that the impairments did not rise to the level of equivalent severity to the listings. (R 20) In connection with the RFC, however, he more exhaustively discussed the evidence. He reviewed, for example, the medical evidence of a fused left wrist, as well as a lumbar MRI showing disc protrusions. The ALJ reviewed medical records from Puerto Rico reflecting joint pain, low back pain, and asthma, and a pulmonary test that was within normal limits. Medical records from December 2010 through July 2013 from the East Orange VA Hospital also showed treatment for asthma and back pain. There was uneventful back surgery, a lumbar fusion, in April 2011, and her neurosurgeon reported in June 2012 that she had recovered well. The ALJ accepted that Ms. Melendez's arm and back impairments, as well as her asthma, would impose significant limitations on her performance of work functions. (R 20–22)

9

The ALJ gave reasons for his qualifying conclusion that the impairments were not as significant as claimed. For example, the claimant reported that she jogs, works out at the gym, volunteers as a volleyball coach, and cares for a dog and a horse. Most startlingly is the ALJ's reference to her running a marathon. (R 19) This may be a reference to her statement to her neurosurgeon in March 2012 that she had completed a half marathon (13.1 miles) at a time of under 1 ½ hours, an enviable pace of 6.8 minutes/mile. (R 1087)

The RFC, quoted above, recognized the physical impairments that had been established, and appropriately limited the claimant to work that would not involve carrying more than 10 pounds occasionally, 5 pounds frequently, standing or walking 2 hours in an 8-hour workday, or sitting 6 hours in an 8-hour workday, as well as exposure to pulmonary irritants, moisture, and extremes of temperature. Those limitations were based in the evidence.

### IV.   Conclusion and Instructions on Remand

Were I considering the physical limitations alone, I would affirm. For the foregoing reasons, however, the ALJ's decision is remanded for further proceedings. The ALJ should look at the claimant's physical and mental impairments; consider them both alone and in combination at step three; and then proceed to the RFC analysis and the remaining steps. The mental impairment evidence should be discussed and analyzed, and the ALJ's reasons for accepting or rejecting components of that evidence should be stated.

To be clear, I do not state or imply that the ultimate conclusion must be one of disability; the flaws identified herein are largely ones of procedure that impaired the court's ability to review.

Dated: September 12, 2016

*/s/ Kevin McNulty*
**Hon. Kevin McNulty**
**United States District Judge**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARITZA MELENDEZ,**<br><br>   **Plaintiff,**<br><br>  v.<br><br>**CAROL W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>   **Defendant.** | Civ. No. 15-4719 (KM)<br><br>**ORDER** |

  This matter having been opened to the Court by the plaintiff, Maritza Melendez, seeking review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security denying a claim for Title II Disability Insurance Benefits; and the administrative record having been filed with the court (ECF No. 9); and the plaintiff having filed a brief in support of the relief sought (ECF No. 13); and defendant, by the Office of the United States Attorney, having answered and filed a brief in opposition (ECF No. 14); and this matter having been fully briefed in accord with L. Civ. R. 9.1; and this Court having reviewed the submissions and come to a decision without oral argument, see L. Civ. R. 9.1(f); for the reasons set forth in the accompanying Opinion, and for good cause shown;

  **IT IS** this 12th day of September, 2016,

  **ORDERED** The ALJ's decision is REVERSED and REMANDED in accordance with the accompanying Opinion.

The Clerk shall close the file.

_____
Hon. Kevin McNulty
United States District Judge